JACK E . GALT, Louise R. Galt, Phil Rostand, Robert E. Saunders, Clarence Edward (Ted) Lucas, James Bottomly, J. Harrison Saunders, Jake Frank, Franklin Grosfield and Lowell E. Hildreth, Plaintiffs and Respondents, v. STATE OF MONTANA, acting by and through THE DEPARTMENT OF FISH, WILDLIFE and PARKS, Defendant and Appellant.

No. 87-255.
Submitted Nov. 12, 1987.
Decided Feb. 11, 1988.
749 P.2d 1089.

Poore, Roth & Robinson, Urban L. Roth argued, Butte, Bob Lane, Dept. of Fish, Wildlife & Parks, Helena, for defendant and appellant.

Harrison, Loendorf & Poston, Philip W. Strope argued, Helena, for plaintiffs and respondents.

Mike Greely, Atty. Gen., Helena, Joe Roberts, Asst. Atty. Gen., Helena, for amicus curiae.

MR. JUSTICE GULBRANDSON delivered the Opinion of the Court.

Appellant/defendant State of Montana (the State) appeals a District Court award of $21,080 in attorneys' fees made to respondent/plaintiffs Galt et al. (Galt). Galt brought this action pursuant to the Uniform Declaratory Judgment Act, Section 27-8-101 through Section 27-8-313, MCA, and sought an order declaring House Bill 265, the "Stream Access Bill," Section 23-2-301 et seq., MCA (1985), unconstitutional as a taking of private property without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article II, Section 29 of the Montana Constitution. The District Court granted summary judgment to the State and Galt appealed.

This Court, in *Galt v. State Department of Fish, Wildlife, and Parks* (Mont.1987 ), [225 Mont. 142,] 731 P.2d 912, 44 St.Rep. 103, partially reversed the District Court and found Sections 23-2-302(2)(d), (e), (f), and portions of Section 23-2-311(3)(e), MCA (1985), unconstitutional. This Court entered declaratory judgment in Galt's favor.

On February 17, 1987, Galt filed a "Memorandum of Costs, Disbursements and Attorneys' Fees" in the District Court. The State objected to Galt's bill of costs and attorneys' Fees and moved that the same be taxed by the District Court. The District Court heard the motion orally and ordered that the State pay plaintiffs' attorneys' fees and costs pursuant to Mont. Const. Art. II, Section 29 which provides the following:

"Eminent domain. Private property shall not be taken for public use without just compensation to the full extent of the loss having first been made to or paid into the court for the owner. *In the event of litigation, just compensation shall include necessary expenses of litigation to be awarded the court when the private property owner prevails.*" ( Emphasis added. )

We affirm with instructions.

The District Court reasoned that the unconstitutional provisions "[i]mposed easements for public use upon Plaintiffs' private property without any compensation" and found that plaintiffs were entitled to attorneys ' fees and costs because they prevailed in this action when the Supreme Court ruled in their favor. The State of Montana appeals the District Court award of attorneys' fees and raises the following issues:

(1) Whether Article II, Section 29 of the 1972 Montana Constitution applies to declaratory judgment actions brought solely to challenge the constitutionality of a legislative enactment?

(2) Did the District Court err in concluding that private property was taken or damaged for public use?

The District Court's award of attorneys' fees will not be reversed absent a clear showing of an abuse of discretion. *Simkins-Hallin Lumber Co. v. Simonson* (Mont. 1984), [214 Mont. 36,] 692 P.2d 424, 427, 41 St.Rep. 2305, 2309. As a preliminary matter, both parties recognize that attorneys' fees are not recoverable absent an express agreement between the parties or statutory authority. *Thornton v. Commissioner of Dept. of Labor and Industry* (Mont. 1980), [190 Mont. 442,] 621 P.2d 1062, 1066, 37 St.Rep. 2026, 2030. It is undisputed that no express agreement allowing attorneys' fees exists between the parties. Galt contends that Mont. Const. Art. II, Section 29 specifically authorizes an award of attorneys' fees in this case.

The State of Montana does not question the amount of attorneys' fees awarded to Galt. The State does, however, argue in its first issue that Mont. Const. Art. II, Section 29 applies strictly to condem-

nation proceedings or actions for inverse condemnation. A private property owner, the State contends, is entitled to "just compensation" only when private property is actually "taken or damaged" for public use. The District Court found that the State's "argument places form over substance" and awarded attorneys' fees and costs to Galt under Mont. Const. Art. II, Section 29. We agree with the District Court's analysis and conclusions concerning the applicability of Mont. Const. Art. II, Section 29 to the particular circumstances of this case.

The State claims that the plain meaning of the statute requires either a condemnation proceeding or an action for inverse condemnation and that a declaratory judgment action cannot qualify Galt for an award of attorneys' fees. Although we must, when possible, determine the intent of the legislature from the plain meaning of the words used in the statute, our reading of the statute does not coincide with the State's interpretation. *State v. Cardwell* (1980), 187 Mont. 370, 373, 609 P.2d 1230, 1232. The statute does not define what legal procedures must be followed to qualify a particular legal action as an eminent domain proceeding.

We recognize that the legislature has provided statutory procedures for the State's exercise of its eminent domain rights. Section 70-30-101, et seq., MCA. These statutes specifically authorize an award of the necessary expenses of litigation to the private property owner who "prevails by receiving an award in excess of the [State's] final offer . . . ." Section 70-30-305(2), MCA. Statutory condemnation proceedings, however, are not the exclusive method by which the State may be taken to task by a private property owner for exercising its right of eminent domain. The State has, in some circumstances, taken private property without an actual physical appropriation of land. *Knight v. City of Billings* (1982), 197 Mont. 165, 642 P.2d 141; *Rauser v. Toston Irr. Dist.* (1977), 172 Mont. 530, 565 P.2d 632. The private property owner often responds in such circumstances by filing an action for inverse condemnation. Rauser, 565 P.2d 632.

This Court held in Rauser, supra, that the private property owner who prevails in an action for inverse condemnation may recover attorneys' fees pursuant to Mont. Const. Art. II, Section 29. *Rauser*, 565 P.2d at 641. In so holding, this Court reasoned that the State's failure to follow the statutory condemnation proceedings "may not be used to deny [the private property owners] their attorney fees." *Rauser*, 565 P.2d at 641. (Additions ours.) Similarly,

Galt's election to settle this matter in a declaratory judgment action cannot be used by the State to deny an award of attorneys' fees in this case.

The Fifth Amendment of the United States Constitution has also been construed by the United States Supreme Court to allow compensation to the private property owner in legal proceedings other than traditional condemnation actions. *Jacobs v. United States* (1933), 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142. In recognizing inverse condemnation actions, Jacobs noted the following with respect to the compensation requirements of the Fifth Amendment:

"[The right to recover just compensation for property taken by the United States] was guaranteed by the Constitution. The fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners did not change the essential nature of the claim. The form of the remedy did not qualify the right. It rested upon the Fifth Amendment. Statutory recognition was not necessary. A promise to pay was not necessary. Such a promise was implied because of the duty imposed by the Amendment. The suits were founded upon the Constitution of the United States." (Additions ours.)

*Jacobs*, 290 U.S. at 16, 54 S.Ct. at 27. We find the reasoning in *Jacobs* to be equally applicable to the instant case. The right to recover just compensation is guaranteed in Montana by both the Fifth Amendment of the United States Constitution and Article II, Section 29 of the Montana Constitution. The form of the action, in this case a declaratory judgment, does not qualify the right to compensation. The right to just compensation rests upon the constitutional mandates. Just compensation in Montana includes attorneys' fees. Mont. Const. Art. II, Section 29.

The State also claims that the legislative intent of the eminent domain statute does not include situations as presented by this appeal. In our review of the legislative history of Article II, Section 29, we will construe the statute to give effect to the legislature's intent. Section 1-2-102, MCA; *Caldwell v. Great Western Sugar Co.* (Mont. 1987), [229 Mont. 448,] 746 P.2d 627, 628, 44 St.Rep. 2123, 2124. The object of the statute must be given foremost consideration and our interpretation of the statute must give effect to that object. Section 1-2-103, MCA; *Dover Ranch v. Yellowstone County* (1980), 187 Mont. 276, 284, 609 P.2d 711, 715.

This Court reviewed .the legislative history of Article II, Section

29, in *Callant v. Federal Land Bank of Spokane* (1979), 181 Mont. 400, 593 P.2d 1036, and noted the following:

"[I]n the case of the state taking private property there is an imbalance between the resources available to the parties which should be redressed by requiring the state to bear full financial burden of the individual whose property is being condemned . . . Excerpts from the Montana Constitutional Convention Vol. VII, pages 5631-5633, indicate that this imbalance underlay the adoption of Article II, Section 29, 1972 Montana Constitution."

*Callant,* 593 P.2d at 1039. In *State Department of Highways v. Olsen* (1975), 166 Mont. 139, 531 P.2d 1330, this Court described the legislature's intent as follows:

"The proceedings at the Constitutional Convention make it abundantly clear that it intended Article II, Section 29 to make the landowner whole in eminent domain proceedings to the extent that the amount of the judgment for the taking of his land and improvements would be a "net recovery" with expenses of litigation assessed against the State, where the landowner prevailed. "

*Olsen,* 531 P.2d at 1335.

We have again reviewed the legislative history of Article II, Section 29, and are convinced that an award of attorneys' fees in this case is consistent with the intent of the constitutional framers. The 1972 Constitutional Bill of Rights Committee comments on Article II, Section 29, include the following:

"Delegate [George] James: [T]he committee unanimously approved substantive changes in the eminent domain section. The thrust of the committee effort was to assure the full and just compensation — that full and just compensation be made in all eminent domain actions. Without it, some of the costs of eminent domain action fall where they do not belong — on the person whose property is being condemned. In order to give substance to the citizen's effort to challenge the compensation figure of the condemnor, the last sentence of this provision was added. Those testifying in opposition to the committee's original eminent domain proposal agreed that this sentence which awards necessary expenses of litigation to the private property owner when he is the prevailing party, is just. The committee intends, by "necessary expenses of litigation", all costs including appraiser's fee, attorney fees and court costs. It is felt that when this stipulation will produce a climate in which the condemnor's offer for compensation will be more — will more adequately reflect the compensation to which the property owner is entitled. The property

owner will have a chance to collect expenses he incurs in challenging the condemnor's action. In addition, it will redress the imbalance between the vast resources brought to bear by the state and those available to the individual property owner in contested cases. The committee recommends this section to the [Constitutional] Convention as insurance that the compensation to the private property owner will, in fact, be just. Delegate Proposal Number 75 was amended to accomplish this provision. I think you're all familiar with the term "the public good". Sometimes this is rather elusive and is used to condemn property and a figure which may be unjust to the property owner is not contested because of the cost of litigation. This [provision], I believe, will correct this situation." (Additions ours.)

Verbatim transcript, Montana Constitutional Convention, March 9, 1972, Vol. VI at 1825-1826. If we adopt the State's argument in this case, the costs of this litigation would undoubtedly fall where they do not belong — on private property owners who are forced to bring a legal action in defense of their property rights. We believe that an award of attorneys' fees to the private property owners in this case reflects the compensation to which they are entitled. Such an award will also serve to redress the imbalance of resources between the State and the private property owners.

It is obvious that the instant case is not a traditional eminent domain proceeding in the form of a condemnation proceeding or inverse condemnation action. In bringing this action, Galt sought a declaratory judgment that certain portions of the Stream Access Bill, Sections 23-2-301, et seq., MCA, were unconstitutional as a taking of private property without just compensation. Eminent domain is defined as the State's right "[t]o take private property for: public use." Section 70-30-101, MCA. It was the legislature's enactment of statutes which resulted in an unconstitutional taking of private property without just compensation that characterizes this case as an eminent domain proceeding. As previously noted, the right to just compensation does not depend on the form of the action. *Jacobs,* supra. Accordingly, Article II, Section 29 is applicable to the specific circumstances of this case.

In its second issue, the State argues that, even if Article II, Section 29 applies, there was no actual "taking" for which Galt can be compensated. The District Court correctly identified the prerequisites of an award of attorneys' fees under Article II, Section 29 as being (1) a taking or damaging of private property for public use, (2) litiga-

tion, and (3) the private property owner prevailing in the litigation. *State v. Standley Brothers* (Mont. 1985), [215 Mont.`475,] 699 P.2d 60, 64, 42 St.Rep. 563, 568; *Bozeman Parking Com'n. v. First Trust Co.* (Mont. 1980), [190 Mont. 107,] 619 P.2d 168, 171, 37 St.Rep. 1610, 1614. The State agrees that these are the statutory prerequisites and concedes that the second and third prerequisites have been met.

The State asserts that the District Court erred in concluding that private property had been taken or damaged for public use. The District Court relied on language in *Galt,* supra, to conclude that private property was taken for a public use easement. The State contends that Galt did not consider or determine whether private property was taken or damaged for public use and that *Galt* simply determined that portions of the Stream Access Bill were invalid.

█ The State overlooks the fact that portions of the Stream Access Bill were held to be unconstitutional for the very reason that those statutes served to take private property without just compensation. *Galt,* 731 P.2d at 913. The Galt decision specifically "reaffirms well established constitutional principles protecting [private] property interests from confiscation [by the State.]" Galt at 916. (Additions ours.) Because of our decision in Galt, the State is collaterally estopped from now raising the "taking" issue. Accordingly, the District Court was correct in concluding that all three of the statutory prerequisites for an award of attorneys' fees were met in this case.

We hold that Article II, Section 29, specifically authorizes an award of attorneys' fees to the private property owners under the particular circumstances of this case. We limit this holding to the facts of this case and to the recognition that just compensation, including necessary expenses of litigation, is constitutionally required where the State takes private property for public use.

Galt requests an award of expenses of this appeal. An award to Galt of expenses on appeal, including attorneys' fees, is proper as "necessary expenses of litigation" under Article II, Section 29 of the Montana Constitution. In addition, Section 25-10-104(2), MCA, provides that costs of appeal must be awarded to the successful party. See also Rule 33, M.R.App.P. This Court requires that the District Court hold an evidentiary hearing to determine the amount of reasonable attorneys' fees and costs. *State v. Helehan* (Mont. 1980), [____ Mont. ____,] 615 P.2d 925, 37 St.Rep. 1516. Accordingly, this

case is referred to the District Court with instructions to calculate and award reasonable attorneys' fees and cost of this appeal to Galt.

Affirmed with instructions to calculate and award attorneys'fees and costs of this appeal to Galt.

MR. CHIEF JUSTICE TURNAGE and MR. JUSTICES HARRISON, WEBER and McDONOUGH concur.

MR. JUSTICE SHEEHY, dissenting:

I dissent, though in so doing I realize that the District Court judge, in granting attorney fees, found his hands tied by the improvident decision of the majority in *Jack E. Galt v. State of Montana and the Department of Fish, Wildlife and Parks* (1987), [225 Mont. 142,] 731 P.2d 912, 44 St.Rep. 103.

That majority decision took away from the people of this State and from the legislature the right to the full use of riverbeds up to the high water mark, a right before that decision recognized by state and federal statutes and courts. It is classic irony that the people now have to pay attorney fees to the parties that diminished their rights to use the riverbeds. Such are the consequences of departure from settled case law.

MR. JUSTICE HUNT concurs with the dissent of MR. JUSTICE SHEEHY.