DA 06-0817

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 193

WILLIAM M. HALLEY,

     Petitioner and Appellant,

v.

STATE OF MONTANA,

     Respondent and Appellee.


APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV 2006-217
Honorable John W. Larson, Presiding Judge


COUNSEL OF RECORD:

     For Appellant:

     William Boggs, Attorney at Law, Missoula, Montana

     For Appellee:

     Hon. Mike McGrath, Montana Attorney General; John Paulson, Assistant
Attorney General, Helena, Montana

     Fred R. Van Valkenburg, Missoula County Attorney; Kirsten LaCroix,
Deputy County Attorney, Missoula, Montana


Submitted on Briefs: February 27, 2008

Decided: June 3, 2008


Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 William M. Halley (Halley) appeals the Fourth Judicial District Court's denial of his Petition for Post-Conviction Relief. We reverse and remand.

## ISSUE

¶2 The dispositive issue on appeal is:

¶3 Did the District Court err in denying Halley's Petition for Post-Conviction Relief?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 During a contentious divorce proceeding, Halley's actions resulted in his arrest on eleven separate criminal charges, including five counts of felony intimidation, two counts of felony stalking, one count of misdemeanor stalking, one count of misdemeanor violation of privacy in communications, one count of misdemeanor unlawful restraint and one count of felony tampering with witnesses. On January 21, 2004, several days after his arrest, a public defender was assigned to his case and arraignment was scheduled for February 10, 2004. The arraignment was subsequently continued at Halley's request to March 9, 2004. Despite having assigned counsel, Halley filed several pro se motions between February 12 and February 20. The District Court issued two orders instructing that Halley's motions be returned "unfiled" on the ground that he was represented by counsel. Subsequently, Halley's hearing was continued until March 18.

¶5 Between January 21 and March 17 Halley's attorney claims to have spent 3.3 hours on his case. She spent another hour on March 18 when she represented him in front of a special master at his arraignment and bond reduction hearing during which

Halley pled not guilty to all counts and requested bail reduction and release on his own recognizance. Both requests were denied.

¶6 On March 25, 2004, Halley sent a letter to Judge Larson, the presiding District Court judge, requesting another bail reduction hearing and claiming ineffective assistance of appointed counsel. He asked the court to appoint a pro bono attorney from outside the public defender's office because his public defender would "not communicate" with him nor would she conduct his defense as he requested. He explained that he believed his rights to effective assistance of counsel, due process of law and reasonable bail were being violated and that he was being dealt "a great injustice" as a result of ineffective counsel. This letter is not recorded in the court's docket nor is there any record of a court response to Halley's letter. Also on March 25, Halley wrote a letter to Judge McLean, another Fourth Judicial District Court judge, complaining of ineffective assistance of counsel and asking for assistance in resolving his situation. Judge McLean acknowledged receipt of the letter and explained that he lacked jurisdiction. He also indicated he had forwarded the letter to Judge Larson.

¶7 On May 10, 2004, Halley sent another letter to Judge Larson, now expressing his desire to waive his right to counsel and to represent himself. He explained that his public defender did not answer his letters and that she refused to cooperate with any of his requests pertaining to his case. The District Court responded to Halley's May 10 letter with an order issued on the same day instructing Halley's attorney to confer with Halley and to be prepared to address this issue at a conference scheduled for June 17, 2004.

¶8 On May 11, 2004, the State filed its Notice of Intent to Seek Increased Punishment, and on May 13, 2004, the court relieved Halley's appointed attorney of her duties and issued an order permitting Halley to represent himself. There is nothing in the record to indicate that Halley's counsel met with him between May 10 and May 13. On May 18, 2004, the court appointed stand-by counsel for Halley but indicated that Halley could continue pro se if desired. Between May 18 and June 17 Halley filed multiple pro se motions, including a motion to dismiss for lack of jurisdiction and one for the State's failure to provide a speedy trial. He also sought, again, to be released on his own recognizance. The court denied some of Halley's motions and reserved others for resolution at the June 17 hearing.

¶9 On June 17 Halley and stand-by counsel appeared before a special master in the District Court. Halley was not asked about the circumstances surrounding the waiver of his right to counsel, nor was he asked whether he was aware of the disadvantages of proceeding without counsel or if his waiver was voluntary. On August 26, 2004, Halley entered into a plea agreement under which he pled guilty to all counts. At the hearing conducted immediately after entering into the plea agreement, Halley told the court that he was completely comfortable with his appointed stand-by counsel, opining that "[s]he's been excellent."

¶10 After almost one year in jail, on January 10, 2005, the District Court sentenced Halley to forty years in the Montana State Prison, all suspended. Halley did not appeal but on March 9, 2006, he filed a Petition for Post-Conviction Relief claiming ineffective assistance of counsel and requesting an evidentiary hearing. In October 2006 the District

4

Court denied Halley's Petition concluding that Halley voluntarily, knowingly and intelligently waived his right to counsel on May 10, 2004, and therefore could no longer claim that he was deprived of his right to counsel based on ineffective assistance. Halley filed a timely appeal.

## STANDARDS OF REVIEW

¶11    We review a district court's denial of a petition for post-conviction relief to determine whether the district court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Jordan v. State*, 2007 MT 165, ¶ 5, 338 Mont. 113, ¶ 5, 162 P.3d 863, ¶ 5. Additionally, we review a district court's denial of a motion for substitution of counsel for an abuse of discretion. *State v. Gallagher*, 2001 MT 39, ¶ 4, 304 Mont. 215, ¶ 4, 19 P.3d 817, ¶ 4 (*Gallagher II*).

## DISCUSSION

¶12    *Did the District Court err in denying Halley's Petition for Post-Conviction Relief?*

¶13    Halley argues that the District Court erroneously failed to conduct a *Gallagher* inquiry pursuant to his written request for substitute counsel and that the District Court failed to hold a hearing before releasing appointed counsel and ordering Halley to represent himself. Halley asserts that these errors in turn led the court to its erroneous denial of his request for post-conviction relief.

¶14    The State counters that the District Court correctly found and concluded that these alleged "errors" became moot at the time Halley "unequivocally, voluntarily, knowingly and intelligently" waived his right to counsel and exercised his right of self-representation.

5

¶15 A defendant's right to effective assistance of counsel is guaranteed by Article II, Section 24 of the Montana Constitution and by the Sixth Amendment to the United States Constitution. *State v. Gallagher*, 1998 MT 70, ¶ 14, 288 Mont. 180, ¶ 14, 955 P.2d 1371, ¶ 14 (*Gallagher I*). In cases where a criminal defendant cannot afford to hire an attorney, counsel is appointed to represent him at public expense. *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963); *State v. Craig*, 274 Mont. 140, 148, 906 P.2d 683, 688 (1995). As noted above, Halley was provided with appointed counsel soon after his arrest. Shortly thereafter, however, Halley became dissatisfied with appointed counsel and requested substitute counsel.

¶16 When a criminal defendant makes a pretrial request for appointment of substitute counsel in conjunction with allegations of ineffective assistance of counsel, we require the district court to make an adequate initial inquiry into the nature of a defendant's complaint to determine if those complaints are "seemingly substantial." *Gallagher I*, ¶ 15. If a defendant's complaint about his relationship with counsel rises to the level of "seemingly substantial" and he requests that the court appoint substitute counsel, the court should conduct a hearing to address the merits of the defendant's claims. *Gallagher I*, ¶ 14.

¶17 We stated in *Gallagher I* that such an initial inquiry is adequate when the district court considers the "defendant's factual complaints together with counsel's specific explanations addressing the complaints." *Gallagher I*, ¶ 15. Conversely, we also said that a district court's initial inquiry is inadequate when there is not even a "cursory inquiry" into the defendant's complaint. *Gallagher I*, ¶ 15. More recently, in *State v.*

*Hendershot*, 2007 MT 49, ¶ 23, 336 Mont. 164, ¶ 23, 153 P.3d 619, ¶ 23, we clearly reiterated that the district court "*must* determine if the complaints are substantial by making an adequate initial inquiry into the nature of the complaints." (Emphasis added.)

¶18    In the case before us, the District Court conducted no inquiry whatsoever into Halley's written allegations of ineffective assistance submitted on March 25. Such failure was an abuse of the District Court's discretion and constitutes reversible error unless the error was cured by Halley's subsequent request to represent himself.

¶19    As indicated above, on May 10 Halley submitted a letter to the District Court. In this letter, rather than requesting appointment of substitute counsel as he had previously done without success, Halley asked to be allowed to represent himself and to waive his right to counsel. He explained that he wished to represent himself because he was dissatisfied with appointed counsel.[1] On May 13, without conducting any inquiry, the court discharged appointed counsel and ordered Halley to proceed through self-representation.

¶20    Just as an accused has a constitutional right to effective counsel, he also has a constitutional right to appear pro se. However, because such action results in the loss of many benefits associated with the right to counsel, the trial court must ensure the defendant is competent to abandon his right to assistance of counsel and proceed pro se. *State v. Colt*, 255 Mont. 399, 403, 843 P.2d 747, 749-50 (1992), *citing Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541 (1974). Competence on the part of a

---

[1] On appeal, Halley asserts that he was "desperate" to get before the court to explain the total breakdown between him and his appointed counsel and thought his request for "waiver" would get the court's "attention."

defendant to abandon his right to counsel and proceed pro se does not necessarily mean he must have the skill and experience of a lawyer, but it does mean that the defendant's relinquishment of his right to counsel must be made voluntarily, knowingly and intelligently. *Colt,* 255 Mont. at 404, 843 P.2d at 749-50. In *State v. Insua*, 2004 MT 14, ¶ 19, 319 Mont. 254, ¶ 19, 84 P.3d 11, ¶ 19, we explained,

> *Faretta* required that a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Faretta,* 422 U.S. at 835, 95 S. Ct. at 2541, 45 L.Ed.2d at 581-82. In applying the *Faretta* standard, we have repeatedly held that "a trial court is not required to advise a defendant specifically of the dangers and disadvantages of self-representation as long as the court makes inquiry of the defendant to the extent it deems necessary to ensure that the defendant's waiver of counsel is voluntary, knowing, and intelligent." (Citation omitted.)

So long as substantial credible evidence exists to support the court's determination that a defendant acted voluntarily, knowingly and intelligently in waiving his right to counsel, we will not disturb the court's ruling. *State v. Langford*, 267 Mont. 95, 100, 882 P.2d 490, 492.

¶21 In the case before us, there is no evidence that the District Court made *any* inquiry of Halley *before* granting Halley's request to waive his right to counsel. In fact, at the time the court issued its May 10 order allowing Halley to proceed pro se, Halley had not appeared before the judge for several weeks; his first appearance after the order did not occur until June 17. Moreover, the hearing transcript reveals that the only inquiry made by the special master on June 17 pertaining to Halley's waiver of his right to counsel consisted of the following:

8

The Court: My understanding is you are proceeding Pro Se. My understanding is that was your clear choice--

Halley: Yes, ma'am.

The Court: --and that the Court has appointed Ms. Latino. I understand her to be a legal advisor, but the active role in this matter you have chosen to take on yourself.

Halley: I understand.

The Court: Is that how you understand it?

Halley: Yes, Your Honor.

As a result of the court's failure to make any substantive inquiry as to whether Halley's waiver was voluntary, knowing and intelligent, there exists no substantial credible evidence to support the court's conclusion that Halley's waiver was voluntary, knowing and intelligent. Therefore, under our clear precedent, we must conclude that Halley's waiver was not a valid exercise of his right of self-representation.

¶22    Moreover, and contrary to the State's argument, subsequent appointment of and participation by stand-by counsel was not an adequate substitute for counsel. As held by the Supreme Court in *McKaskle v. Wiggins*, 465 U.S. 168, 177-78, 104 S. Ct. 944, 950-51 (1984), the appointment of stand-by counsel can be a very useful step in a case in which a defendant wishes to represent himself; however, the proper role of stand-by counsel is quite limited in that:

> [t]he defendant preserves actual control over the case he presents to the jury: standby counsel cannot substantially interfere with any significant tactical decisions, cannot control the questioning of witnesses, and cannot speak in place of the defendant on any matter of importance. *Id.* Standby "counsel" is thus quite different from regular counsel. Standby counsel does not *represent* the defendant. The defendant represents himself, and may or may not seek or heed the advice of the attorney standing by. As

9

such, the role of standby counsel is more akin to that of an observer, an attorney who attends the trial or other proceeding and who may offer advice, but who does not speak for the defendant or bear responsibility for his defense. Thus, as useful as standby counsel may be when a defendant wishes to represent himself, this Court holds that standby counsel is not "counsel" within the meaning of the Sixth Amendment. (Emphasis in original.)

*United States v. Taylor*, 933 F.2d 307, 313 (5th Cir. 1991). As such, Halley was deprived of his constitutional right to counsel during critical stages of the criminal proceeding. *Craig*, 274 Mont. at 148, 906 P.2d at 688.

¶23 Lastly, as Halley's guilty pleas were entered without counsel and without a valid waiver of counsel, his pleas are invalid and must be vacated. *State v. Browning*, 2006 MT 190, ¶ 15, 333 Mont. 132, ¶ 15, 142 P.3d 757, ¶ 15.

¶24 While a district court has discretion to appoint, or refuse to appoint, substitute counsel after an initial *Gallagher* inquiry and hearing, if required, it does not have discretion to ignore a defendant's allegations of ineffective counsel and refuse to conduct an inquiry. In the case before us, the District Court abused its discretion in failing to comply with the *Gallagher* guidelines when presented with a claim of ineffective counsel and a request for substitute counsel. It further erred in failing to inquire adequately whether Halley's waiver of his right to counsel and request to represent himself was voluntarily, knowingly and intelligently made.

¶25 As a result, the District Court's Opinion and Order Denying Petitioner's Petition for Post-Conviction Relief is based on incorrect conclusions of law.

**CONCLUSION**

10

¶26    For the foregoing reasons, we vacate Halley's guilty pleas, reverse the District

Court's denial of his petition, and remand this matter for retrial.


                                                    /S/ PATRICIA COTTER


We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART